IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SARA JUDITH GARCIA GALDAMEZ,<br>JORGE ARMANDO ESCOBAR BARILLAS,<br>AND<br>VIRGINIA DE JESUS PEÑA POZUELOS,<br><br>Plaintiffs,<br><br>v.<br><br>I.Q. DATA INTERNATIONAL, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:15-cv-01605 |

**DEFENDANT I.Q. DATA INTERNATIONAL, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

I.Q. Data International, Inc. ("IQ Data"), by counsel, pursuant to Rule 7(F)(1) of the Local Rules of this Court, states as follows for its Reply Memorandum in Support of its Motion to Dismiss the Complaint filed by Sara Judith Garcia Galdamez, Jorge Armando Escobar Barillas, and Virginia de Jesus Peña Pozuelos (collectively, "Plaintiffs"):

## I. ARGUMENT

### A. THE AMOUNT IQ DATA SOUGHT TO COLLECT WAS PERMITTED BY LAW. IQ DATA, THEREFORE, DID NOT VIOLATE THE FDCPA.

The issue presented by Defendant's Motion to Dismiss boils down to this essential question: Did IQ Data attempt to collect an "amount" of "debt" that is "permitted by" Virginia law? The answer to the question is yes, because Virginia law entitles a landlord to collect interest on unpaid rent and the FDCPA expressly defines "debt" without regard to whether the creditor has obtained a judgment. *See* 15 U.S.C. § 1692a(5).

The Fair Debt Collection Practices Act (the "FDCPA") provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and it

further provides that the "following conduct is a violation of the [FDCPA]: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such *amount* is expressly authorized by the agreement creating the debt or *permitted by law*." *Id.* § 1692f(1) (emphasis added).

Plaintiffs do not appear to dispute that Virginia law permits IQ Data to recover interest on the debt owed by Plaintiffs. Instead, Plaintiffs assert that IQ Data is not entitled to collect interest on the debt until after it has sued the Plaintiffs and obtained a judgment on the principal amount owed. Plaintiffs assert that at that time, and only at that point in time, can IQ Data seek to collect interest, but only if a court or a jury awards interest. Plaintiff's argument, however, obscures the issue and creates a trap within the FDCPA that debt collectors cannot escape.

Under Plaintiffs' theory, the debtor could never be told that he or she owes interest on the unpaid rent or that interest is accruing on the unpaid rent until the jury entered a verdict (or the court entered a judgment) in favor of the debt collector, because, until then under Plaintiffs' theory, interest is not permitted by law. Thus, under Plaintiffs' theory, if a debt collector informs a debtor that it will collect interest and that interest is accruing, it violates the FDCPA.

This theory cannot stand. Indeed, the FDCPA defines "debt" to mean any obligation or alleged obligation of a consumer to pay money . . . *whether or not such obligation has been reduced to judgment*." *Id.* § 1692a(5). The FDCPA required IQ Data to send Plaintiffs a validation notice identifying the "amount" of their "debt." *See id.* 1692g(a)(1). The amount of debt that IQ Data is entitled to recover in a judgment cannot be the test of whether it violated the FDCPA when the FDCPA defines "debt" specifically without regard to whether the creditor obtained a judgment. Moreover, a debt collector can violate the FDCPA if its validation notice does not inform the debtor that interest is accruing on the debt when interest is in fact accruing

because then the validation notice does not correctly inform the debtor of the amount of the debt. *See e.g.*, *Jones v. Midland Funding, LLC*, 755 F. Supp. 2d 393, 397 (D. Conn. 2010) ("[W]hen a debt is accruing interest, a validation notice fails to correctly state the amount of the debt as required by § 1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate."); *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007) (false statements in the course of litigation constitute violations of the FDCPA).

Neither Virginia law nor the FDCPA requires the absurd results that Plaintiffs' theory creates. A debt collector may attempt to collect what it would be entitled to collect in a judgment against the debtor, because that amount is permitted by law. After all, courts enforce rights that exist at the time the parties submit their dispute to the court for resolution.

**1. IQ Data's validation notice correctly stated the amount of Plaintiffs' debt as permitted by law.**

IQ Data's validation notice (the "Letter") was IQ Data's initial communication with Plaintiffs regarding their debt. It is a debt validation notice that the FDCPA requires. *See* 15 U.S.C.A. § 1692g(a). Section 1692g(a)(1) of the FDCPA required the Letter to identify the "amount" of Plaintiffs' "debt." *See id.* § 1692g(a)(1). The FDCPA defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money . . . whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). Under Virginia law, the "amount" of Plaintiffs' "debt" consists of principal and interest, because Virginia law entitles a landlord (thus, it permits the landlord) to recover interest on a tenant's unpaid rent. Interest accrues on the debt from the time of breach. Within the meaning of the FDCPA, therefore, interest is part of Plaintiffs' "debt" regardless of "whether or not [Plaintiffs'] obligation has been reduced to judgment." *See id.* Accordingly, to accurately apprise Plaintiffs of the correct "amount" of their "debt," IQ Data had to identify both principal and interest amounts. The FDCPA required IQ Data to do so. *See id.* §

1692g(a); *Jones v. Midland Funding, LLC*, 755 F. Supp. 2d 393, 397 (D. Conn. 2010). And, IQ Data was permitted to recover the interest on the unpaid debt by law.

Virginia law provides that in an action to recover unpaid rent, "interest *shall* be allowed as on other contracts." Va. Code Ann. § 55-227 (emphasis added). The statute's clear and unambiguous language belies any suggestion that it does not entitle a landlord to recover, and obligate a tenant to pay, interest on a tenant's unpaid rent. Indeed, if the General Assembly intended that interest be a discretionary component of a landlord's damages in an action to recover unpaid rent, it would have said that "interest *may* be allowed as on other contracts." Such language would confirm that seeking interest is permissible and reserve its award to a trial court's discretion. The General Assembly instead employed express, mandatory language entitling a landlord to recover interest on a tenant's unpaid rent. Accordingly, Virginia law expressly permits the recovery of interest on unpaid rent.

Moreover, a landlord's entitlement to interest springs from well-established principles of Virginia law. In Virginia, interest is a legal incident of a debt. Indeed, under Virginia law: "'[w]hen the action is founded upon a promise, express or implied, to pay money at a given day, interest on the principal sum from that day is a legal incident of the debt, and the right to it founded on the presumed intention of the parties.'" *Washington & Old Dominion Ry. v. Westinghouse Elec. & Mfg. Co.*, 89 S.E. 131, 135 (Va. 1916); *see also McVeigh's Ex'r v. Howard*, 13 S.E. 31, 33 (Va. 1891) ("[I]n the absence of any express agreement for the payment of interest in obligations for the payment of a certain sum of money on demand, or on a given day, interest on the principal sum from the time it becomes payable is 'a legal incident of the debt,' and the right to it is founded on the presumed intention of the parties.").

Finally, Va. Code § 55-227 applies in the context of a residential landlord's recovering unpaid rent from a residential tenant.[1] As a threshold matter, the statute applies to rights regarding "[r]ent *of every kind*." *See* Va. Code Ann. § 55-227 (emphasis added). It further affirms and guarantees rights belonging to a "landlord." *Id.* The term "landlord," as used in the statute, means "the owner or lessor of the *dwelling unit* or the building of which such dwelling unit is a part." *Id.* § 55-225.8(A) (emphasis added). The term "dwelling unit," in turn," means "a single-family residence where one or more persons maintain a household." *Id.* Based on the foregoing, Va. Code § 55-227 applies in the residential tenancy context and guarantees certain rights vested in a residential landlord, including an entitlement to interest on unpaid rent.

**2. Plaintiffs' argument regarding *prejudgment* interest is a red herring.**

Plaintiffs contend that IQ Data attempted to collect *prejudgment* interest on their debt. Plaintiffs are mistaken. IQ Data's entitlement to interest on Plaintiffs' unpaid rent springs from the law and is guaranteed by Va. Code § 55-227, as detailed above. An award of *prejudgment* interest, however, is governed by a wholly distinct statutory framework in Virginia.

Va. Code § 8.01-282 governs the award of prejudgment and postjudgment interest in Virginia. That Code section provides that "[i]n any . . . action at law, the final order . . . or if no jury the judgment . . . of the court, *may* provide for interest on any principal sum awarded . . . ." Va. Code Ann. 8.01-382 (emphasis added). By its terms, Va. Code § 8.01-382 vests a trial court

[1] Contrary to Plaintiffs' assertion, IQ Data has not conceded that Plaintiffs' tenancy is governed exclusively by the Virginia Residential Landlord Tenant Act (the "VRLTA"). *See* ECF No. 10, 3 n.3. Indeed, IQ Data specifically argued and maintains that Chapter 13 of the Code of Virginia—the Virginia Landlord-Tenant Act (the "VLTA")—and the VRLTA contain overlapping provisions that apply in the residential tenancy context. Section 55-227 is one such example of overlap between the two cooperating statutory frameworks. Plaintiffs' failure to cite to any authority for the proposition that "[t]he VLTA only applies to VRLTA tenancies to the effect not contradicted or overruled by the VRLTA," *id.*, is telling.

with discretion to award prejudgment interest. A judgment "may" provide for such interest. The award is not mandatory.

Va. Code § 55-227, by contrast, provides that "interest *shall* be allowed . . . ." *Id.* § 55-227 (emphasis added). Plainly the General Assembly intended to make clear that landlords were permitted by law to obtain interest on unpaid rent by expressly providing for that in Section § 55-227. Otherwise, it would have said nothing because any party can be awarded prejudgment interest under Va. Code § 8.01-382.

Moreover, different statutes govern the applicable interest rates for a discretionary award of prejudgment interest under § 8.01-382 and a landlord's entitlement to interest under Va. Code § 55-227. Indeed, Va. Code § 6.2-302 defines the interest rate applicable to a discretionary award of prejudgment interest. *See id.* Virginia Code § 6.2-301, by contrast, governs the interest rate applicable to a landlord's entitlement to interest.

Under § 6.2-301, the "legal rate of interest" is 6% per annum. *Id.* § 6.2-301(A). The "legal rate" is "implied when there is an obligation to pay interest and no express contract to pay interest at a specified rate." *See id.* § 6.2-301(B). Under Virginia law, as guaranteed by § 55-227, a landlord is entitled to receive, and a tenant is obligated to pay, interest on unpaid rent. The Lease, in this instance, does not expressly provide for interest. Accordingly, "there is an obligation to pay interest and no express contract to pay interest at a specified rate." The "legal" rate of interest, not the "judgment" rate of interest, thus applies.

**3. The *Fulk* case rests on a misapplication of the FDCPA.**

Plaintiffs erroneously rely on the district court's decision in *Fulk v. LVNV Funding LLC*, 55 F. Supp. 3d 967, 973. (E.D. Ky. 2014) to argue that IQ Data may not collect interest before a

judgment has been rendered.[2] In refusing to allow a debt collector to include prejudgment interest before obtaining a judgment awarding such interest, the *Fulk* Court expressed concern that: "[a]llowing *extra-judicial* accrual of interest would not allow for disputes regarding the amount of debt or when the right to prejudgment interest begins to run to be brought before the trier of fact." *Fulk v. LVNV Funding LLC*, 55 F. Supp. 3d 967, 973. (E.D. Ky. 2014) (emphasis added).[3] It did so because, in Kentucky, "an award for [prejudgment interest on either a

[2] The remaining cases that Plaintiffs cite are readily distinguishable from the instant case and applicable Virginia law. Indeed, *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 446, 447-48 (6th Cir. 2014) specifically concerned the waiver of contractual interest and a debt collector's subsequent efforts to recover prejudgment interest during the waiver period at the statutory rate. The court's found that, in Kentucky, "a party has no right to statutory interest if it has waived the right to collect contractual interest." *Id.* at 445. Likewise, *Hage v. Gen. Serv. Bureau*, 306 F. Supp. 2d 883, 886, 888 (D. Neb. 2003) concerned a creditor collecting, among other things, prejudgment interest in a settlement pursuant to a Nebraska statute expressly limiting the award of interest to circumstances where the claimant "establishes the claim and secures judgment thereof." *See* Neb. Rev. Stat. § 25-1801. The pertinent Nebraska statute only provides for interest "from the date of presentation [of the claim]," not from the date of the breach. *See id.* The Nebraska statute further would not appear to apply to a landlord's recovering unpaid rent from a tenant. Unlike the Virginia statute, the Nebraska statute certainly does not contain an express entitlement to interest in the specific context of a landlord's recovering unpaid rent. Similarly, *Paige v. Waukesha Health Sys., Inc.*, No. 12-C-0601, 2013 WL 3560944, at *7 (E.D. Wis. July 11, 2013) concerned prejudgment interest under Wisconsin common law. In Wisconsin, the award of prejudgment interest is discretionary and "not included automatically." *Id.* Moreover, the statute on which the defendant in *Paige* relied did not authorize interest but instead simply set the interest rate. *Id.* at *6. Finally, *McCabe v. Eichenbaum & Stylianou, LLC*, Civ. A. No. 11-7403, 2012 WL 6624229, at *3 (D.N.J. Dec. 19, 2012) concerned a debt validation that included *prejudgment* interest, the award of which the court specifically noted "is a matter of discretion for the trial court." The case did not concern a creditor including interest to which it is entitled without regard to judicial discretion, such as a landlord's entitlement to interest under § 55-227 of the Code of Virginia.

[3] The Court's focus on a supervised or unsupervised (i.e., "extra-judicial") request for interest disregards the FDCPA's operation and runs contrary to its provisions. The FDCPA allows consumers to contest the debt—not just interest provisions, but the principal amount of the debt as well. *See* 15 U.S.C.A. § 1692g(b). The FDCPA makes no distinction between supervised or unsupervised requests. Moreover, the FDCPA specifically defines "debt" to include any "*alleged* obligation . . . *whether or not such obligation has been reduced to judgment*." *Id.* § 1692a(5) (emphasis added). Because the FDCPA requires creditors to identify the "amount" of the "debt," it clearly contemplates that creditors will include amounts owed (or allegedly owed) prior to obtaining a judgment. In other words, the FDCPA contemplates that creditors will—and

liquidated or unliquidated] claim presupposes that 'the trier of fact, judge or jury, has decided *both the question of breach of contract and the amount due for the breach* before reaching the question of interest as damages.'" *Id.* (emphasis added) (quoting *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 144 (Ky. 1991)).

Applying the *Fulk* Court's improvident logic produces untenable and impractical results. Indeed, under the *Fulk* Court's reasoning, the defendant could not include the *principal* amount of debt without first having a judgment awarding the principal amount. After all, including the principal amount implicates the same concerns that the court expressed regarding prejudgment interest: doing so "would not allow for disputes regarding the amount of debt." *Id.* According to the *Fulk* Court, the defendant could not include prejudgment interest because it could not collect that amount until "'the trier of fact, judge or jury, has decided *both the question of breach of contract and the amount due for the breach* before reaching the question of interest as damages.'" *Id.* (emphasis added) (quoting *Nucor Corp.*, 812 S.W.2d at 144). The same would be true with respect to the principal amount: the defendant would not be entitled to the principal amount until the trier of fact determined breach of contract and the amount recoverable for the breach.

The *Diaz* Court, by contrast, rightly recognized the resulting untenable circumstance that the *Fulk* Court failed to observe. Indeed, the *Diaz* Court reasoned that "[i]f a prior court judgment were a *sine qua non* for relief to be 'permitted by law,' a person would not be able to file a lawsuit seeking prejudgment interest unless she had already obtained a judgment awarding prejudgment interest." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1330 (9th Cir. 2015). This "Cath-

---

indeed must—include unsupervised or "extra-judicial" amounts. The salient issue simply is whether the amount of "debt" is "permitted by law."

22," *id.*, is precisely the type of untenable result that the *Fulk* Court's reasoning produces and the *Diaz* Court refused to condone.

It is not "the case that a debt collector must generally be entitled *by judgment* to a type of relief in order for that relief to be 'permitted by law' within the meaning of 15 U.S.C. § 1692f(1)." *Id.* (emphasis in original). The *Diaz* Court's proclamation captures what this Court must determine: whether the amount of "debt" in the Letter" is "permitted by [Virginia] law," not whether IQ Data is entitled to that amount by a judgment. Indeed, as noted above, the FDCPA specifically defines debt to mean "any obligation or *alleged obligation* of a consumer to pay money . . . *whether or not such obligation has been reduced to judgmen*t." *Id.* § 1692a(5) (emphasis added). Accordingly, whether IQ Data is entitled to the amount *by judgment* cannot be the test where the FDCPA specifically required IQ Data to identify the "amount" of Plaintiffs' "debt" and expressly defines "debt" by reference to obligations or "alleged obligation[s]" without regard to any judgment.

Virginia law entitles IQ Data to interest on Plaintiffs' unpaid rent. Interest is a legal incident of Plaintiffs' debt. The amount of "debt" identified in the Letter is "permitted" under Virginia law, and so Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted.

## II. CONCLUSION

For the reasons identified above and in IQ Data's Memorandum in Support of its Motion to Dismiss (ECF No. 4), Plaintiffs fail to state a claim upon which relief can be granted as a mater of law. This Court, therefore, should grant IQ Data's Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice.

Date: February 19, 2016

Respectfully submitted,

/s/

Charles M. Sims, Esquire (VSB No. 35845)
D. Sutton Hirschler III, Esquire (VSB No. 85596)
LeClairRyan, A Professional Corporation
919 East Main Street, Twenty Fourth Floor
Richmond, Virginia 23219
Telephone: (804) 343-5091
Facsimile: (804) 783-7655
Charles.Sims@leclairryan.com
Sutton.Hirschler@leclairryan.com
*Counsel for Defendant IQ Data International, Inc.*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on the 19th Day of February, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Simon Y. Sandoval-Moshenberg (VSB No. 77110)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Phone: (703) 720-5605
Fax: (703) 778-3454
simon@justice4all.org

Brenda Castañeda (VSB No. 72809)
Kim Rolla (VSB No. 85625)
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, Virginia 22903
Phone: (434) 977-0553
Fax: (434) 977-0558
brenda@justice4all.org
kim@justice4all.org

Jeffrey Kaliel (CA 238293)
Admitted *pro hac vice*
Tycko & Zavareei, LLP
1828 L Street NW, Suite 1000
Washington, DC 20036
Phone: (202) 973-0900
Fax: (202) 973-0950
jkaliel@tzlegal.com

*Counsel for Plaintiffs*

/s/
Charles M. Sims, Esquire (VSB No. 35845)
D. Sutton Hirschler III, Esquire (VSB No. 85596)
LeClairRyan, A Professional Corporation
919 East Main Street, Twenty Fourth Floor
Richmond, Virginia 23219
Telephone: (804) 343-5091
Facsimile: (804) 783-7655

Charles.Sims@leclairryan.com
Sutton.Hirschler@leclairryan.com
*Counsel for Defendant IQ Data International, Inc.*