IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SARA JUDITH GARCIA GALDAMEZ, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | 1:15-CV-1605 (LMB/JFA) |
| ) | |
| I.Q. DATA INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Before the Court is defendant's Motion to Dismiss [Dkt. No. 3], which has been fully briefed and argued. For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

Sara Judith Garcia Galdamez, Jorge Armando Escobar Barillas, and Virginia de Jesus Pena Pozuelos (collectively, "plaintiffs") filed a two-count complaint against I.Q. Data International, Inc. ("IQ" or "defendant"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Compl. ¶ 1 [Dkt. No. 1], Dec. 1, 2015. In short, plaintiffs allege that defendant added interest to a purported outstanding balance without any basis in law or contract and in doing so used false, deceptive, and misleading representations about the amount of the alleged debt and engaged in unfair debt collection practices. Id.

The debt relates to a residential lease plaintiffs signed jointly and severally as co-lessees with Fairmont Residential, LLC on May 11, 2012 for an apartment in Fairmont's Annandale, Virginia complex. Id. ¶ 4. The form lease did not provide for interest charges on unpaid balances; rather, the lease provides only for a one-time late fee on unpaid balances. Id. ¶¶ 11, 12. Plaintiffs

moved out of their apartment when their lease expired on June 10, 2015. Id. ¶ 8. Shortly after plaintiffs vacated their apartment, the landlord contended that they owed a balance of $3,276.84 in unpaid rent, unpaid utility bills, and charges for repair of alleged minor damages to the apartment. Id. ¶ 9. This alleged debt is not itemized on the collection letter. Plaintiffs contest that they owe anything to the landlord. Id. ¶ 9 n.1. The landlord never sued plaintiffs for any of the unpaid balances or repairs and accordingly has not obtained a judgment against them; instead, the landlord assigned plaintiffs' account to IQ for collections, and IQ sent each plaintiff a collection letter on July 17, 2015. Id. ¶¶ 10, 13, 14. This collection letter is attached to the complaint and states that $19.93 of interest is due on the debt, and asserts that the "unpaid principal balance will accrue interest at a rate of 006.00 percent per annum." Id. ¶ 15. Plaintiffs assert that the statements about interest were false and that there is no interest due or accruing under Virginia law or according to the terms of the lease. Id. ¶ 16. The complaint alleges that each individual plaintiff experienced a measurable amount of stress and anxiety at the idea that his or her balance would continue to grow, id. ¶ 20; and in the alternative, plaintiffs maintain that even if interest were legally allowed to accrue, the collection letter falsely represented the amount of interest owed because it calculated interest starting from a date preceding their alleged breach of the lease contract.[1] Id. ¶ 21.

In Count I, plaintiffs allege that IQ used false, deceptive, or misleading representations in connection with the collection of any debt in violation of §§ 1692e(2)(A), 1692e(10), and

---

[1] Plaintiffs would like to bring this suit as a class action based on the allegation that IQ's practices are uniform and other consumers nationwide have been subject to the same allegedly illegal practices. Id. ¶ 22. Specifically, plaintiffs seek to represent residents of Virginia, Maryland, West Virginia, North Carolina, and South Carolina to whom such letters were sent during the one-year period before they filed the complaint and also a subclass consisting solely of Virginia residents to whom such letters were sent. Id. ¶ 30. The class action issue has not been resolved.

1692f(1). Id. ¶ 44. In Count II, they claim that IQ misrepresented the actual amount alleged to be owed by plaintiffs and created a false sense of urgency that overshadowed the 30-day right to request verification by including an interest provision in the same paragraph in violation of § 1692g and § 1692g(a)(1). Id. ¶¶ 47, 48. Plaintiffs request statutory damages pursuant to § 1692k(a)(2) ($1,000); actual damages pursuant to § 1692k(a)(1); and costs and reasonable attorney's fees pursuant to § 1692k(a)(3).

## II. DISCUSSION

In its Motion to Dismiss, defendant argues that the bulk of plaintiffs' claims are based on the incorrect premise that Virginia law does not permit interest on unpaid rent[2] owed pursuant to a residential lease, and that to the extent that plaintiffs' claims rely on that premise, they should be dismissed.[3] In response, plaintiffs argue that Virginia law does not allow a debt collector to automatically impute interest to an unpaid balance of rent—rather, such interest is available only if explicitly contained in the terms of the lease or after the debt has been reduced to a judgment.

### A. Standard of Review

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must allege facts that "state a plausible claim for relief" and "are sufficient to raise a right to relief above the speculative level." Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Although a plaintiff "need not forecast evidence sufficient to prove the elements of the claim,"

---

[2] The Virginia code defines "rent" as "all money, other than a security deposit, owed or paid to the landlord under the rental agreement." Va. Code Ann. § 55-248.4.

[3] Defendant explicitly states that this motion does not apply to the remaining portions of plaintiffs' claims, which present questions of fact properly resolved at a later juncture. Such questions of fact include whether the exact amount of interest charged was correct and the amount of any unpaid balance or damages to the rental unit. Def.'s Mem. at 1 n.1.

the complaint must "allege sufficient facts to establish those elements." Id. (quoting Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Thus, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In evaluating whether a plaintiff has successfully "nudg[ed] [his] claims across the line from conceivable to plausible," a court must "accept the truthfulness of all factual allegations." Burnette v. Fahey, 687 F.3d 171, 180 (4th Cir. 2012) (quoting Twombly, 550 U.S. at 555); however, it is not required to "assume the veracity of 'bare legal conclusions.'" Id. (quoting Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011)).

### B. Pre-judgment Interest

Count I is a claim that the allegedly false statement about the accrual of interest violated both § 1692e and § 1692f. To prevail on a claim under § 1692e, plaintiffs must show that IQ, as a debt collector, used a "false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. To prevail under § 1692f, they must show that IQ used "unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. A false representation of the "amount . . . of any debt" would violate the former, § 1692e(2)(A), whereas § 1692f would be violated by "[t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f(1).

IQ argues that Virginia law permits it to collect 6% interest per annum on overdue balances of residential leases.[4] If IQ is correct in its view of Virginia law, its collection letter was

---

[4] In Virginia, the legal rate of interest is 6% per annum, and this rate is implied "when there is an obligation to pay interest and no express contract to pay interest at a specified rate." Va. Code Ann. § 6.2-301. There is no provision in the lease for either interest or a rate of interest.

4

neither false nor misleading and did not employ any deceptive means. Def.'s Mem. in Supp. of Its Mot. to Dismiss at 4 [Dkt. No. 4], Feb. 1, 2016 ("Def.'s Mem."). Defendant bases its position about entitlement to interest on Va. Code Ann. § 55-227, which provides that

> Rent of every kind may be recovered by distress or action. A landlord may also, by action, recover, when the agreement is not by deed, a reasonable satisfaction for the use and occupation of lands. On the trial of such action, if any parol demise or any agreement not by deed whereon a certain rent was reserved shall appear in evidence, the plaintiff shall not therefor be nonsuited, but may use the same as evidence of the amount of his debt or damages. <u>In any action for rent</u>, or for such use and occupation, interest shall be allowed as on other contracts

Va. Code Ann. § 55-227 (emphasis added). IQ claims that the language "shall be allowed" removes any discretion associated with the award of interest. Def.'s Mem. at 4. Although it is true that under Virginia law, "[in] the ordinary case of a failure to comply with a contract to pay money at a stipulated time[,] . . . the measure of damages for the breach of the contract is the principal sum due, and legal interest thereon," <u>Bethel v. Salem Imp. Co.</u>, 93 Va. 354 (1896), it is not clear that interest is imputed automatically.

Relying on the plain language of the statute, which discusses recovery of rent "by distress or action," plaintiffs argue that in Virginia pre-judgment interest for unpaid rent is only permitted when that rent has been collected through a judicial proceeding. Pls.' Opp'n at 3. They point to the Virginia Residential Landlord and Tenant Act ("VRLTA"), which defines an "action" as a "recoupment, counterclaim, set off, or other civil suit and any other proceeding in which rights are determined, including without limitation actions for possession, rent, unlawful detainer, unlawful entry, and distress for rent." Va. Code Ann. § 55-248.4; Pls.' Opp'n at 3 n.4. Under the plaintiffs' reading of the relevant law, a landlord who has not included interest in the lease at issue may only seek interest as a court-ordered remedy. <u>Id.</u> at 4. Here, no suit has been filed against the plaintiffs; accordingly, plaintiffs contend, defendant is not permitted to collect interest under a plain reading of Va. Code Ann. § 55-227. <u>Id.</u> at 3.

5

In addition, plaintiffs argue that even when interest is permitted, it is always discretionary under § 55-227. As the Virginia Supreme Court has stated in a breach of contract case, "the principal distinction between pre-judgment and post-judgment interest is that the decision whether to award pre-judgment interest is discretionary with the trier of fact, while the application of post-judgment interest for all money judgments is mandatory." Upper Occoquan Sewage Auth. v. Blake Const. Co., Incorporated/Poole & Kent, 275 Va. 41, 63 (2008). Indeed, plaintiffs correctly point out that the Virginia cases defendant cited for the proposition that pre-judgment interest automatically accrues in fact hold that pre-judgment interest is merely available as a remedy. Pls.' Opp'n at 5. For example, in Bethel, cited above, the discussion of interest arises within the context of available remedies in a breach of contract action. 93 Va. at 354. Moreover, plaintiffs argue that their case is not one in which a discretionary award of pre-judgment interest would be appropriate because the late fee included in the lease is an adequate remedy for breach, and furthermore, Virginia courts rarely award pre-judgment interest in cases of unpaid rent. Id. at 5-6.

Plaintiffs also assert that another statutory provision, Va. Code Ann. § 55-248.31, which is within the VRLTA, governs the instant situation. Pls.' Opp'n at 3 n.3. That section explicitly provides the procedure and remedies available to landlords for collecting unpaid rent. Va. Code Ann. § 55-248.31(F). In contrast, the statute upon which defendant relies, Va. Code Ann. § 55-227, is found within the Virginia Landlord-Tenant Act ("VLTA"), an older statute that has not been applied by any modern decision to a VRLTA lease. Pls.' Opp'n at 3 n.3. Describing the difference between the VRLTA and the VLTA, plaintiffs assert that the VLTA only applies to VRLTA tenancies to the extent it is not contradicted or overruled by the VRLTA. Id. Plaintiffs do not cite any authority for this proposition, and defendant in response alleges, also without

support, that the two statutory frameworks are complementary and have overlapping provisions. Def.'s Mem. at 4 n.1. Indeed, defendant disputes whether the VRLTA governs the instant tenancy at all. Def.'s Reply Mem. in Supp. of Its Mot. to Dismiss at 5 n.1 [Dkt. No. 13], Feb. 19, 2016 ("Def.'s Reply").

Plaintiffs are correct in their assertion that no case in the last hundred years has applied § 55-227 to a situation analogous to the one at hand. Furthermore, the VRLTA by its own terms applies to the lease at hand. Under § 55-248.31, the provisions of the VRLTA apply "to all rental agreements entered into on or after July 1, 1974, which are not exempted pursuant to § 55-248.5"; none of the exemptions listed in § 55-248.5, including residences at a public or private institution, or in a fraternity house, appear to apply here. Accordingly, § 55-248.31 governs the instant lease, and § 55-248.31 does not contain any reference to pre-judgment interest.

In an attempt to rebut plaintiffs' arguments, IQ cites an opinion out of the Ninth Circuit for the proposition that "it [is not] the case that a debt collector must generally be entitled <u>by judgment</u> to a type of relief in order for that relief to be 'permitted by law' within the meaning of 15 U.S.C. § 1692f(1)." <u>Diaz v. Kubler Corp.</u>, 785 F.3d 1326, 1330 (9th Cir. 2015) (emphasis in original). Although the facts in <u>Diaz</u> are similar to those in the instant action insofar as the <u>Diaz</u> plaintiff received a collection letter that sought a statutorily defined percentage of interest on a debt, the California statute in <u>Diaz</u> differs substantially from the Virginia statutory provision by stipulating that any person entitled to recover uncontested damages is also entitled to recover interest thereon from the day that right vested. <u>Id.</u>; Pls.' Opp'n at 9. Unlike the Virginia statute, the California statute does not include language limiting interest to sums obtained "in any action." Accordingly, the California statute at issue in that opinion appears to create an explicit entitlement to pre-judgment interest that is absent from the relevant Virginia statutes.

IQ supplemented its motion with an additional authority, Trease v. Tri-State Adjustments, Inc., 934 F. Supp. 2d 1016 (E.D. Wis. 2013). This case does not help its position because it held that "where the amount of debt was undisputed and did not have to be determined by litigation, defendant had a right to seek preverdict interest" under Wisconsin law. Id. at 1019. According to the Eastern District of Wisconsin's opinion, where the amount of the debt is in dispute, as it is in the instant action, defendants by implication do not have a right to seek pre-judgment interest. Moreover, Wisconsin law obviously materially differs from the relevant Virginia law. See Pls.' Opp'n at 2 n.1.

Even if Virginia law allowed for the collection of pre-judgment interest absent a valid and enforceable judgment, plaintiffs argue this right was waived by the specific terms of the lease. Defendant responds that there is a "presumption against excluding statutory or legal rights absent a clear waiver of such rights" and that there is no clear waiver of such rights found in the lease at hand. Def.'s Mem. at 6-7; Elderberry of Weber City, LLC v. Living Centers-Se., Inc., 794 F.3d 406, 413 (4th Cir. 2015), as amended (Aug. 10, 2015). In particular, IQ argues that the one-time late fee of 10% for unpaid balances stipulated in the lease does not constitute a waiver of pre-judgment interest because the "language employed in the contract [does not] clearly show[] an intent that the remedy be exclusive." Bender-Miller Co. v. Thomwood Farms, Inc., 211 Va. 585, 588 (1971); Def.'s Mem. at 6. Rather, IQ contends, the late-fee provision merely identifies the amount of and circumstances under which the fee applies and fails to limit the ability of the landlord to seek any other remedy. Def.'s Mem. at 8.

In response, plaintiffs argue that when leases are unambiguous, courts are limited to construing the document as it is written and may not add un-bargained-for terms. Pls.' Opp'n at 6. Plaintiffs cite Pocahontas Min. Liab. Co. v. CNX Gas Co., LLC, 276 Va. 346, 353 (2008) and

8

Plunkett v. Plunkett, 271 Va. 162, 167 (2006) to support their description of Virginia's strict approach to contract construction. Specifically, they argue that the one-time 10% late fee, a bounced check fee, and the imposition of costs relating to reletting of the premises are the only remedies available to defendant because they are the only remedies included in the lease. Indeed, plaintiffs highlight that this lease agreement included an integration clause that explicitly repudiated any additional terms outside of the four corners of the document. Pls.' Opp'n at 6. In addition, plaintiffs point out that this contract was a contract of adhesion written by the landlord, and as a principle of contract interpretation, "any doubts or inconsistencies should be resolved against the author of the document." Roanoke Iron & Bridge Works, Inc. v. Gilbane Bldg. Co., 1 Va. Cir. 344 (1983). Reading the document only with reference to its contents and construing it against the drafter, defendant has clearly waived any remedies not contained therein. For these reasons, defendant's Motion to Dismiss is denied as to Count I.

### C. Violations of § 1692g

The second count, under § 1692g, requires plaintiffs to prove by sending the letter that IQ violated the requirement that "[a]ny collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt." § 1692g. The portion of the letter in question reads as follows:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. . . . Your outstanding principal balance will accrue interest at a rate of 006.00 percent per annum.

Compl., Ex. A.

IQ asserts that the last sentence reproduced above, which had three sentences separating it from the first, could not have overshadowed the recipient's understanding of the right to dispute the debt. Def.'s Mem. at 11. To support this proposition, IQ cites Bryant v. Wells Fargo

9

Bank, National Association from the Eastern District of North Carolina, which states,

> Plaintiffs do not state how a statement that appears to merely affirm the accrual of interest would overshadow the least sophisticated consumer's understanding of his right to request that a debt collector provide verification of the debt. Any argument on this point fails because "even the most unsophisticated consumer would understand that ... debt accrues interest."

Bryant v. Wells Fargo Bank, Nat. Ass'n, 861 F. Supp. 2d 646, 652 (E.D.N.C. 2012) (quoting Weiss v. Zwicker & Assocs., P.C., 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009)). The sentence in IQ's letter regarding interest appears to be comparable to the one discussed by the Eastern District of North Carolina; however, it would still run afoul of § 1692(a)(1), which requires the accurate communication of the amount of debt. Because Virginia law does not automatically permit the imputation of interest on unpaid rent, this statement is inaccurate insofar as it implies otherwise.

Even though the defendant characterized its motion as being limited to "the threshold legal question that [p]laintiffs present: whether Virginia law entitles IQ Data to collect interest on [p]laintiffs' debt," Def.'s Mem. at 1 n.1, the Court will address this count under Fed. R. Civ. P. 12(b)(6). Although the Court has found that the statement about the outstanding balance accruing interest is false, the reasoning of the Eastern District of North Carolina in Bryant applies with equal force here. For the same reasons as the court in Bryant articulated, the Court finds that the inclusion and placement of the inaccurate statement about interest accruing does not cause it to overshadow defendant's notification to plaintiffs of their right to dispute the debt. Therefore, the Court will grant the Motion to Dismiss as to Count II, and Count I will go forward.

### III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss [Dkt. No. 3] will be granted in part and denied in part by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 15th day of March, 2016.

/s/
Leonie M. Brinkema
United States District Judge